799 P.2d 901

**McINTYRE REFRIGERATION, INC., a California corporation, Third–Party Plaintiff–Appellee,**

**and**

**Tecumseh Products Company, a Michigan corporation, Third–Party Defendant, Third–Party Plaintiff, Appellee, Cross–Appellant,**

**v.**

**MEPCO ELECTRA, a Delaware corporation, Third–Party Defendant–Appellant, Cross–Appellee.**

No. 1 CA–CV 89–007.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 4, 1990.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gerald Gaffaney, Leonce A. Richard, Phoenix, for appellee McIntyre Refrigeration, Inc.

Jones, Skelton & Hochuli by Mark D. Zukowski, Phoenix, for appellee/cross-appellant Tecumseh Products Co.

Christopher D.C. Hossack, Phoenix, for appellant/cross-appellee Mepco Electra.

## OPINION

LANKFORD, Judge.

This litigation is the result of a fire which destroyed the Wagon Wheel Restaurant in Quartzite, Arizona. After investigators determined that the fire probably started in the refrigeration compressor of a pie cooler in the restaurant, the owners filed a lawsuit against International Harvester Company, the manufacturer of the compressor, and against McIntyre Refrigeration Company (McIntyre), the seller.

McIntyre filed a cross-claim against International Harvester, as well as a third-party complaint against Tecumseh Products Company (Tecumseh) and Arizona Refrigeration Supplies, Inc. (ARS). The court later dismissed International Harvester from the lawsuit by stipulation.

Tecumseh filed a third-party complaint against Texas Instruments and Mepco

Electra (Mepco). Prior to filing its third-party complaint, Tecumseh had unsuccessfully tendered the defense of the lawsuit to these parties. McIntyre also filed a third-party complaint against Texas Instruments and Mepco.

An investigation of the fire revealed that it had started in a refrigeration compressor unit purchased from McIntyre approximately two weeks before the fire. McIntyre had purchased the unit from ARS, which in turn had purchased it from Tecumseh. Tecumseh had assembled the compressor's three components, consisting of an electrical relay manufactured by Texas Instruments, a start capacitor manufactured by Mepco, and a compressor component manufactured by Tecumseh.

The plaintiffs' expert witness testified that the electrical relay, which was mounted inside a metal box attached to the housing, malfunctioned and ignited. According to this testimony, the heat from the relay caused the start capacitor, also mounted inside the metal box, to explode. The explosion ejected flammable material through a small wiring hole in the metal box. The combination of fuel and fire caused a "blow torch" effect which apparently ignited a nearby table, causing the fire to spread from the product to the building.

The plaintiffs' expert had no opinion on whether the start capacitor was defective. However, he did believe that the start capacitor was an active cause of the fire because it exploded and spewed forth its contents, generating the flame which ignited the table. He testified that the fire probably would not have occurred had the start capacitor not exploded.

Tecumseh moved for partial summary judgment against Texas Instruments and Mepco, seeking reimbursement pursuant to A.R.S. § 12–684(A) for its costs and attorney's fees incurred in defending McIntyre's third-party action. McIntyre subsequently joined in the motion.

Mepco filed cross-motions for summary judgment against Tecumseh and McIntyre on the ground that no evidence revealed that the component it had manufactured, the start capacitor, was defective.

The superior court granted partial summary judgment in favor of Tecumseh and McIntyre against Mepco and Texas Instruments. It simultaneously denied Mepco's cross-motions. The effect of this ruling was to hold Mepco and Texas Instruments responsible for the costs and attorney's fees incurred by Tecumseh and McIntyre.

The case subsequently proceeded to trial on the plaintiffs' strict liability claim against McIntyre only. On the first day of trial, counsel for Tecumseh was substituted as counsel of record for McIntyre, pursuant to a "Joint Defense Agreement" among Tecumseh, McIntyre, Texas Instruments and Mepco. The jury returned a defense verdict. The superior court entered judgment on the verdict.

Counsel for Texas Instruments subsequently requested leave to substitute as counsel of record for Tecumseh. After the court consented to the substitution, Tecumseh filed its application for attorney's fees and costs against Mepco pursuant to the court's previous partial summary judgment in favor of Tecumseh and McIntyre. Tecumseh sought attorney's fees and costs totalling $78,347.40.

Mepco opposed an award of fees and costs in any amount. It also argued alternatively that any otherwise recoverable amount should be reduced by two items: first, a $33,000 payment made by Texas Instruments to Tecumseh pursuant to an agreement between those parties, and second, the amount of attorney's fees and costs which Tecumseh allegedly had incurred in pursuing its indemnity claim and which Mepco argued was not attributable to the defense of the plaintiffs' product liability claim, an amount which was said to be $21,295.76.

McIntyre filed a similar application for attorney's fees pursuant to the partial summary judgment. McIntyre claimed $14,-799.97, of which $5,883 was said to have been incurred in defending the plaintiffs' product liability claim. The remainder represented McIntyre's share of the total fees incurred when Tecumseh represented all of the defendants at trial.

The superior court awarded attorney's fees of $5,883 to McIntyre and $24,051.64 to Tecumseh. The court reduced Tecumseh's fees and costs because it decided that Tecumseh was not entitled to recover the expenses of pursuing its indemnity claim. It further reduced Tecumseh's request by the amount of the $33,000 payment received by Tecumseh from Texas Instruments.

Mepco timely appealed from the judgments and Tecumseh timely cross-appealed. McIntyre neither appealed nor cross-appealed.

Mepco argues on appeal that the superior court erred in awarding costs and attorney's fees to Tecumseh and McIntyre. Tecumseh, in its cross-appeal, argues that the court arbitrarily reduced the amount of its recoverable attorney's fees and costs.

## I.

■ The first issue presented is whether Tecumseh is entitled to recover any costs and attorney's fees from Mepco pursuant to A.R.S. § 12–684. A.R.S. § 12–684 states, in pertinent part:

A. In any product liability action where the manufacturer refuses to accept a tender of defense from the seller, the manufacturer shall indemnify the seller for any judgment rendered against the seller and shall also reimburse the seller for reasonable attorneys' fees and costs incurred by the seller in defending such action ...

Mepco's appeal challenges the award to Tecumseh on the theory that because the plaintiffs never alleged that Mepco's start capacitor was defective, they did not assert a "product liability action" against Mepco. Mepco contends that it would not further the purpose of § 12–684—which Mepco says is to allow a blameless seller to recover costs and attorney's fees from the manufacturer of a *defective* product—to award costs and fees against a manufacturer whose product was not defective.

We believe that reimbursement is authorized in this situation. The statute conferring the right to reimbursement of defense costs requires neither allegation nor proof that the manufacturer's product is defective. Under § 12–684, a downstream seller is entitled to recover costs and attorney's fees from the manufacturer regardless of whether the trier of fact finds that the product was defective.

■ The statute makes an important distinction between a seller's right to indemnification and his right to reimbursement. The seller can be indemnified against liability to the plaintiff only if the plaintiff recovers a judgment against the seller. In contrast, the seller's right to reimbursement for costs and attorney's fees does not depend upon the entry of a judgment in the plaintiff's favor.

In *Hellebrandt v. Kelley Co. Inc.*, 153 Ariz. 429, 737 P.2d 405 (App.1987), this court held that the statutory right to reimbursement is not contingent on a finding against the seller. In reversing the trial court's denial of attorney's fees and costs to a seller after a defense verdict, the court explained:

We do not believe reimbursement of fees and costs to a seller in a product liability action brought against it and a manufacturer is contingent on the seller losing the case. As a matter of policy that makes no sense, and nothing in the statute requires that result. A faultless seller is as victimized by being required to defend a meritless claim against it as by one having merit because of a manufacturer's defective product. By distinguishing between indemnification of a judgment and reimbursement of fees and costs, we believe the legislature recognized this. Indemnification requires a judgment; reimbursement does not.

153 Ariz. at 430, 737 P.2d at 406.

Mepco argues that the reasoning of *Hellebrandt* should not extend to the manufacturer of a component that is not defective. Because the component manufacturer in that situation is as blameless as the downstream seller, Mepco contends, there is no reason to shift the cost of the seller's defense onto the component manufacturer.

The legislature decided this question when it enacted § 12–684. The statute

clearly confers a right to reimbursement from the manufacturer for the costs of defending against the underlying tort claim. The legislature pointedly omitted any requirement that there be a liability judgment against either the manufacturer or the seller as a condition of reimbursement. This is an entirely sensible arrangement, because the manufacturer's superior knowledge about the product places it in a better position than the seller to defend the product against the claim that it was defective. The right to reimbursement encourages the manufacturer to assume the seller's defense. Because of the manufacturer's superior position, the defense may be mounted more efficiently and effectively by it than by the seller. The manufacturer's success in its defense against the plaintiff's claim does not defeat the statutory purpose; on the contrary, it illustrates the wisdom of placing the burden of the defense on the shoulders of the manufacturer.

Mepco nevertheless argues that the statute should not apply to allow reimbursement from a component manufacturer when there is neither an allegation nor proof that the component was defective. Regardless of the merits of this proposition, this case does not fall within it. Mepco was a named third-party defendant. Allegations were made that its start capacitor was defective.

■ The statutory language is controlling here. A.R.S. § 12–684 confers the right to reimbursement for defense costs in a "product liability action." "Product liability action" is defined by A.R.S. § 12–681(3) as "any action brought against a manufacturer or seller of a product for damages for bodily injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, test-

ing, packaging, labelling, sale, use or consumption of any product." Because the right to reimbursement is not conditioned on the ultimate outcome of the claim, whether the action is a "product liability action" must be tested by the nature of the claims asserted rather than by the facts.

The claims involved here constitute a product liability action within the statutory definition. The plaintiffs alleged in their complaint against McIntyre that the compressor unit, of which the start capacitor was a component, was defective. Moreover, the third-party complaints filed by McIntyre and Tecumseh specifically alleged that Mepco's start capacitor was negligently or defectively designed and manufactured. These claims constituted a "product liability action" involving Mepco's product. The claims triggered the seller's right to reimbursement for defense costs.

■ We emphasize that a manufacturer's product need not be proven to be defective to render the manufacturer liable for the seller's defense costs. Therefore, even in the face of evidence that the start capacitor was not defective or did not cause the plaintiff's injury, its manufacturer—Mepco—was responsible for the seller's costs and attorney's fees pursuant to § 12–684.[1]

We conclude that the superior court properly held Mepco liable for the sellers' costs and attorney's fees.

## II.

Our determination that Tecumseh is entitled to recover costs and attorney's fees incurred in its own defense brings us to the question raised in Tecumseh's cross-appeal. Tecumseh requested costs and attorney's fees totalling $78,347.40. The superior court denied a portion of Tecumseh's request in an amount equal to the total of

---

1. *Groundless allegations of defectiveness may* be sanctionable under Rule 11(a), Arizona Rules of Civil Procedure. Moreover, in a case in which such evidence is unopposed, the manufacturer should be able to obtain summary judgment in its favor and against the plaintiff. When there are several manufacturer defendants, a single component manufacturer which presents unopposed evidence that its component

was either not defective or not a cause of the plaintiff's injury is entitled to a final partial summary judgment. In such a case, the prevailing defendant might argue that it is not liable for defense costs incurred after the entry of judgment in its favor. However, no such argument is made here and we do not decide the point.

Tecumseh's expenses of pursuing its indemnity claim, plus the payment by Texas Instruments to Tecumseh.

## A.

■ We first consider whether Tecumseh's attorney's fees and costs incurred in pursuit of its indemnity claim against Mepco are recoverable under A.R.S. § 12–684(A). Mepco contends that a downstream seller's entitlement to costs and attorney's fees is limited to those incurred in *defending* the plaintiffs' product liability claim, and does not include those incurred in seeking indemnity from other third-party defendants. We agree.

The statutory language does not support the award of expenses incurred in pursuing an indemnity claim. The statute states that in addition to indemnifying the seller for the amount of any judgment rendered against the seller, the "manufacturer ... shall also reimburse the seller for reasonable attorney's fees and costs *incurred by the seller in defending such action ...*" A.R.S. § 12–684(A) (emphasis added).

"Such action" refers to a "product liability action" as defined in § 12–681(3). As we discussed above, a product liability action includes one brought against a seller or manufacturer for damages caused by the use of a product. The statute by its own terms does not include attorney's fees and costs incurred by a seller in pursuing an indemnity claim against a manufacturer. "[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965).

Tecumseh argues that the statute does not expressly forbid its recovery of these expenses. However, the general rule is that an award of attorney's fees must be based upon an affirmative authorization by contract or in a statute. *Taylor v. Southern Pac. Transp. Co.*, 130 Ariz. 516, 637 P.2d 726 (1981).

That the legislature chose not to award these expenses is confirmed by the body of general indemnity law. The common law formed the legal context in which the legislature acted in enacting an indemnity statute addressed to product liability actions in particular. The well-established common law rule is that an indemnitee is *not* entitled to costs and attorney's fees incurred in pursuit of its indemnity claim. For example, this court has unequivocally stated that "the right of indemnity includes a right to attorney's fees incurred in defending the underlying claim, but *does not include the right to fees incurred in establishing the right of indemnity.*" *INA Ins. Co. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 256, 722 P.2d 975, 983 (App.1986) (emphasis added; citations omitted). *See Howard P. Foley Co. v. Employers–Commercial Union*, 15 Ariz.App. 350, 353, 488 P.2d 987, 990 (1971) ("[L]egal fees and expenses incurred in connection with trial of the issue of *indemnity* are not recoverable by the indemnitee.") (Emphasis in original).

The legislature was presumably aware of this general common law rule. *See Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934 (1984) (legislature is presumed to be aware of the law when it enacts a statute). Without some indication that the legislature chose to alter the general rule, we decline to strain the apparent meaning of the statute and permit recovery of these expenses. The superior court correctly rejected Tecumseh's claim for fees incurred in pursuing its indemnity claim.

## B.

Tecumseh argues, however, that even if it were not entitled to these expenses, the trial court arbitrarily reduced its claim in the amount suggested by Mepco. It is true that when Mepco claimed that $19,178.00 of Tecumseh's expenses were attributable to the indemnity claim, Mepco did not substantiate its position by referring to specific items in the documentary records submitted in support of Tecumseh's claim. These records included detailed time entries by Tecumseh's attorneys.

Tecumseh's complaint that the amount suggested by Mepco was unsubstantiated is made for the first time on appeal. Even now, Tecumseh points to no specific error

on the part of the trial court. We decline to consider arguments made for the first time on appeal. *See Stratton v. Inspiration Consol. Copper Co.,* 140 Ariz. 528, 683 P.2d 327 (App.1984).

Moreover, we believe that the trial judge was capable of making his own, independent review of Tecumseh's detailed records and identifying the items which were not recoverable under the statute. That the superior court found that the amount which should be disallowed was the amount suggested by Mepco reveals no error.

■ Finally, the burden of proving a fee claim lies with the applicant. *See Crouch v. Pixler,* 83 Ariz. 310, 320 P.2d 943 (1958). It was Tecumseh's obligation to prove the amount of its fees recoverable under the statute, and not the objecting party's responsibility to show how much of Tecumseh's request was not recoverable. If, as Tecumseh's argument suggests, the evidence failed to clearly segregate the recoverable fee items from those not recoverable, then the trial judge was entitled to resolve any doubt against Tecumseh as the party which failed to discharge its burden of proof.

■ Tecumseh also argues that the trial court erred in reducing its recovery in the amount of a $33,000 payment to Tecumseh from Texas Instruments pursuant to an agreement between them. The agreement in question is somewhat obtuse. It provides that in exchange for Texas Instruments' payment of $33,000 to Tecumseh, Tecumseh assigned to Texas Instruments all rights in the partial summary judgment for costs and fees in favor of Tecumseh against Mepco and Texas Instruments. Texas Instruments also agreed to indemnify Tecumseh for any costs and legal fees incurred by Tecumseh in defending the underlying product liability action pursuant to a "Joint Defense Agreement" entered into by Tecumseh, Texas Instruments, Mepco and McIntyre. Finally, the agreement provided that Texas Instruments would succeed to all of Tecumseh's rights and liabilities arising out of the Joint Defense Agreement.

Tecumseh asserts that this agreement had various purposes, and that payment of Tecumseh's costs of defense was not one of them. Tecumseh points to no extrinsic evidence to illuminate the parties' intention. Nor does Tecumseh cite any authority supporting its interpretation of the agreement.

Mepco apparently contends that the payment was a settlement of Texas Instruments' liability to Tecumseh for costs and attorney's fees pursuant to the partial summary judgment. Mepco also argues that Texas Instruments paid part of Tecumseh's defense cost.

■ The parties have suggested that the superior court's decision should be reviewed only for abuse of discretion. We disagree. The determination that certain expenses are not recoverable under the statute is a decision of law that is reviewable *de novo.* Moreover, the superior court's interpretation of the ambiguous contract involved here is a decision of fact. The decision as to the meaning of the contract is reversible only if it is clearly erroneous. *See* Rule 52(a), Arizona Rules of Civil Procedure; *Schade v. Diethrich,* 158 Ariz. 1, 760 P.2d 1050 (1988); *Holaway v. Realty Associates,* 90 Ariz. 289, 367 P.2d 643 (1961).

We believe that the superior court did not err in agreeing with Mepco. If the payment by Texas Instruments—a party which, along with Mepco, was obligated by the judgment to reimburse Tecumseh for its attorney's fees—was a payment for Tecumseh's fees, then the payment partially satisfied the joint obligation of Texas Instruments and Mepco to reimburse Tecumseh. If the payment satisfied part of the obligation, Tecumseh could not obtain double recovery by extracting a payment from another party for the same amount. The superior court correctly decided the law.

■ The court also did not clearly err in interpreting the ambiguous agreement to find that the payment was in partial satisfaction of Tecumseh's judgment for attorney's fees. Nothing in the language of the agreement supports Tecumseh's interpretation to the contrary. On the other hand, the agreement expressly assigns Tecum-

seh's rights in the partial summary judgment to Texas instruments. Among other things, that provision relieved Texas Instruments of its joint liability with Mepco under that judgment to reimburse Tecumseh for its costs and attorney's fees. As a direct result, Mepco was left solely liable to Tecumseh for the entire judgment. By relieving Texas Instruments of its obligation to reimburse Tecumseh for fees and costs, Texas Instruments' payment was in effect a payment in reimbursement.

The agreement states that Texas Instruments would indemnify Tecumseh for fees and costs incurred later under the Joint Defense Agreement. That suggests that if the cash payment were for fees and costs, then the fees and costs being paid were those previously incurred by Tecumseh in its own defense—i.e., the fees and costs which Mepco was obligated to pay by the partial summary judgment.

We conclude the trial court did not err in offsetting the $33,000 payment against the total amount of attorney's fees and costs otherwise due to Tecumseh.

### III.

McIntyre requests an award of its attorney's fees on appeal against Mepco pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure. That rule authorizes this court to impose penalties or damages, including attorney's fees, where an appeal is frivolous or taken solely for purposes of delay. Although we have rejected Mepco's arguments on the direct appeal, we do not regard its arguments as frivolous. McIntyre's request for attorney's fees on this basis is therefore denied.

Tecumseh also requests attorney's fees incurred on appeal, without specifying the authority for its request. In our discretion, we also deny that request.

The judgments in favor of McIntyre and Tecumseh are affirmed.

EHRLICH and TAYLOR, JJ., concur.