7 P.3d 112

**DESERT GOLF CARS, Crossclaimant– Appellant, Cross Appellee,**

v.

**YAMAHA MOTOR CO., Crossdefendant– Appellee, Cross Appellant.**

**No. 1 CA–CV 99–0419.**

Court of Appeals of Arizona, Division 1, Department D.

June 8, 2000.

As Amended June 13, 2000.

Carnahan & Perry, PLC By Michael W. Carnahan, Daniel W. McCarthy, Gary L. Hudson, Phoenix, Attorneys for Crossclaimant–Appellant, Cross Appellee.

Gallagher & Kennedy, P.A. By Michael L. Gallagher, Donald B. Petrie, Phoenix, Attorneys for Crossdefendant–Appellee, Cross Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Desert Golf Cars ("Desert Golf") appeals the trial court's grant of a directed verdict to Yamaha Motor Company ("Yamaha"). Yamaha cross-appeals the trial court's award of costs. For the following reasons, we reverse both the directed verdict and the award of costs.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 In 1988, the Scottsdale Princess Resort ordered a room services cart from Desert Golf. To fill the resort's order, Desert Golf purchased a golf cart from Yamaha and modified it to better serve its intended function. The original Yamaha golf cart was changed by adding thirty-two inches of length and installing a food-service body. Although the seat was altered slightly, the occupants' compartment was largely unchanged.

¶ 3 On September 22, 1994, the plaintiff below, a bartender at the resort, was injured when she was riding in the cart with two other resort employees.[1] The driver made a sharp left turn, and plaintiff fell out of the cart.

¶ 4 Plaintiff filed her complaint against both Desert Golf and Yamaha, seeking damages for her injuries. In her complaint, plaintiff claimed that the two defendants manufactured and sold the defective cart to her employer. Essentially, plaintiff claimed that the cart had been designed and manufactured without an adequate passenger restraint system.

¶ 5 Desert Golf tendered its defense to Yamaha, which refused to defend because of Desert Golf's modifications. Desert Golf then filed a cross-claim against Yamaha, seeking indemnity and reimbursement of attorneys' fees pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–684 ("section 684"). Yamaha answered, maintaining that it did not design, manufacture, distribute or sell the cart.

¶ 6 Three days prior to trial, and over three years after filing suit, plaintiff, pursuant to a stipulation with Yamaha, announced that she intended to voluntarily dismiss her claims against it.[2] In her motion to dismiss, plaintiff stated that Yamaha did not design or manufacture the cart. At oral argument on the motion, plaintiff's counsel explained why he believed that Yamaha was not liable for plaintiff's injuries: "I think you should know that in our original complaint, we were really gunning for Desert Golf, but we ... were lead [sic] to believe that Yamaha produced the [cart]." Over Desert Golf's objection, the trial court dismissed Yamaha.

¶ 7 At trial, after both plaintiff and Desert Golf had presented their evidence, Yamaha moved for a directed verdict on Desert Golf's cross-claim, arguing that it neither designed nor manufactured the cart. The trial court granted Yamaha's motion, and the case went forward only as to plaintiff's claims against Desert Golf. At the close of trial, the jury returned a verdict in favor of Desert Golf.

¶ 8 After trial, Yamaha submitted a statement of costs to which Desert Golf objected. The trial court sustained in part Desert

---

1. The cart was designed for no more than two occupants, and the driver admitted that he knew the resort's policy against exceeding that limit.

2. Although Yamaha objects to the characterization of the stipulation as a "settlement," we note that Yamaha agreed to not seek fees or costs from plaintiff. Yamaha subsequently sought more than $26,000 in costs from Desert Golf.

Golf's objection and awarded Yamaha $9659.97 of the $26,049.71 that it had requested. Desert Golf now appeals the directed verdict issued in favor of Yamaha, while Yamaha cross-appeals the trial court's refusal to award its full costs.[3] We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## DISCUSSION

¶9 Desert Golf argues that the Arizona product liability statutes, A.R.S. §§ 12–681 through 12–687 in general, and section 684 in particular, compel Yamaha to reimburse its attorneys' fees and costs arising out of the underlying lawsuit. Yamaha, of course, rejects that conclusion. Furthermore, while both parties agree that the application of the Arizona product liability statutes ordinarily presents a question of fact for the jury, each argues that the facts here require a judgment in its favor as a matter of law. We agree that section 684 controls, but conclude that the question of whether Yamaha must reimburse Desert Golf remains an unresolved question of fact.

¶10 Section 684 states, in pertinent part:

A. In any product liability action where the manufacturer refuses to accept a tender of defense from the seller, the manufacturer shall indemnify the seller for any judgment rendered against the seller and shall also reimburse the seller for reasonable attorneys' fees and costs incurred by the seller in defending such action, unless either paragraph 1 or 2 applies:

. . . .

2. The seller altered, modified or installed the product, and such alteration, modification or installation was a substantial cause of the incident giving rise to the action, was not authorized or requested by the manufacturer and was not performed in compliance with the directions or specifications of the manufacturer.

¶11 Section 684 is intended, in most circumstances, to place the burden and costs of defending products on their manufacturers. *See McIntyre Refrigeration v. Mepco Electra,* 165 Ariz. 560, 564, 799 P.2d

901, 905 (1990). This reflects the legislature's judgment that liability ought to begin with the manufacturer who is best situated to detect, control or prevent the putative defect. See 13 American Law of Products Liability § 52:98, at 52–137 (Timothy E. Travers ed., 3rd ed.1987). Of course, when a seller modifies the product and that modification substantially causes the incident in question, then it is the seller who steps into the shoes of the manufacturer as being the one best situated to detect, control or prevent the putative defect. *See id.*

¶12 *McIntyre* further established that "a manufacturer's product need not be proven to be defective to render the manufacturer liable for the seller's defense costs." *Id.; see also Hellebrandt v. Kelley Co., Inc.,* 153 Ariz. 429, 430, 737 P.2d 405, 406 (1987) ("A faultless seller is as victimized by being required to defend a meritless claim against it as by one having merit because of a manufacturer's defective product."). Here, although no fault was ultimately placed on either Yamaha or Desert Golf, Yamaha argues that because Desert Golf modified the cart, Desert Golf was either the "manufacturer" responsible for the costs of defense or the seller whose modifications to the golf cart were "a substantial cause of the incident giving rise to the action," thereby disqualifying Desert Golf from reimbursement under the statute.

¶13 The Arizona product liability statutes define "manufacturer" as "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer." A.R.S. § 12–681(1). The statutes define a "seller" as "a person or entity, including a wholesaler, distributor, retailer or lessor, engaged in the business of leasing any product or selling any product for resale, use or consumption." A.R.S. § 12–681(7). In this case, we focus on the intended operation of section 684 that entitles the *downstream* seller/modifier to compensation from the *upstream* manufacturer, unless otherwise precluded by subsec-

---

3. Given our conclusion, we need not consider Yamaha's cross-appeal because the award of

costs must be vacated pending the outcome of the indemnity issue.

tion 684(A)(2). Because Desert Golf does not deny that it modified the cart, or contend that Yamaha authorized or requested the modifications or gave it any directions, the sole question is whether Desert Golf's modifications were "a substantial cause of the incident giving rise to the action."

¶ 14 Desert Golf argues that, because the jury found that it was not liable for plaintiff's injuries, its modifications could not have been a "substantial cause of the incident" pursuant to section 684. But that analysis fails for two reasons.

¶ 15 First, Desert Golf's argument would be compelling only if "substantial cause of the incident" were defined to mean "causing harm and a resulting judgment in the plaintiff's favor." But we cannot read section 684 so narrowly because a favorable defense verdict does not preclude indemnity. Moreover, a defense verdict does not compel the conclusion that the defendant's modifications were not a substantial cause of the underlying incident. That is, an incident can occur without creating liability. In fact, section 684 refers only to the "incident." It is entirely possible that the jury believed Desert Golf's modifications to be a substantial cause of the incident, but not the proximate cause because of someone's intervening negligence. Or perhaps the jury believed that Desert Golf was not negligent in modifying the cart. Thus, it is possible for Desert Golf to be denied indemnity even when the verdict is in its favor.

¶ 16 Second, even if the jury had specifically decided that Desert Golf did not substantially cause the incident pursuant to section 684, the verdict could not bind Yamaha. To illustrate, had Desert Golf first successfully defended its case against plain-

tiff without Yamaha's involvement, and then brought suit against Yamaha for defense cost indemnity, Yamaha would have been entitled to a trial on the merits of Desert Golf's subsequent indemnity claim. Yet here, because its motion for directed verdict was granted, Yamaha presented no evidence to the jury, and merely cross-examined the witnesses for plaintiff and Desert Golf. Its limited participation in the trial, however, did not waive its right to a full trial on the merits of Desert Golf's indemnity claim. Therefore, the indemnity issue cannot be decided by this jury's verdict without violating Yamaha's right to a trial by jury. *See* Ariz. Const. art. 6, § 17.

¶ 17 Although each party now argues that, given the underlying facts, the indemnity claim can only be resolved in its favor, we conclude that reasonable minds could differ as to whether the modifications were a substantial cause of the incident. *See Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 309, 802 P.2d 1000, 1004, 1008 (1990) (court may grant summary judgment only if, when viewing evidence in light most favorable to non-movant, reasonable jury could not find for party). Plaintiff had originally alleged that both Yamaha and Desert Golf were liable for manufacturing and selling the defective cart. Moreover, during nearly three and a half years of discovery, plaintiff had not focused on the Desert Golf modifications as the sole cause of the accident, but rather on the fact that centrifugal force, combined with a faulty handrail, caused her to fall out of the cart.[4] Notwithstanding these allegations, at trial, plaintiff presented evidence that Desert Golf failed to construct modifications necessary to make the cart safe for its intended use. Given this conflicting evidence, we cannot say that a reasonable trier of fact only could find for one party.[5]

4. Indeed, as late as April 10, 1998, plaintiff claimed that any modifications that Desert Golf made to the cart resulted in *less* risk because the modifications increased the cart's turning radius and consequently reduced the centrifugal force applied during a turn.

5. Yamaha also argues that plaintiff's dismissal of all claims against Yamaha acted as a judgment on the merits on its liability. But plaintiff's release of claims does not affect Desert Golf's ability to press its claim. *See, e.g., Torres v.*

*Kennecott Copper Corp.,* 15 Ariz.App. 272, 274, 488 P.2d 477, 479 (1971) (dismissal with prejudice only res judicata to claims reasonably framed by pleadings). Further, plaintiff's lack of confidence in her case is not the focus of section 684, which instead focuses on whether Desert Golf's modifications substantially caused the incident. To that end, while *plaintiff* may have agreed that Yamaha was not at fault, that does not change Yamaha's potential liability to *Desert Golf* for reimbursement of its defense costs.

¶ 18 Because reasonable minds could disagree about whether the modifications were a substantial cause of the incident, this matter must be remanded for a factual determination by the jury. Unfortunately, the parties also disagree over the type of review contemplated by section 684 in these unusual circumstances. Therefore, to assist the trial court on remand, we will consider this issue as well. *See, e.g., Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 591, 653 P.2d 45, 48 (1982) (court of appeals reaching issues not necessary to holding to assist trial court on remand), *disapproved on other grounds, Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987).

¶ 19 When a trial results in a verdict in favor of the plaintiff, the application of section 684 is normally straightforward. In such instances, the trial court will simply instruct the jury to render a special verdict determining whether the subject modification was a substantial cause of the underlying incident.

¶ 20 But this approach is not helpful when considering a defense verdict, because that verdict leaves unanswered which party was the "actual cause" of the underlying incident when neither party is legally responsible for the plaintiff's injuries. In this type of situation, some courts have looked solely to the pleadings. *See Weston v. Globe Slicing Machine Co.*, 621 F.2d 344, 348 (9th Cir.1980) (interpreting Idaho law); *Conrad v. Suhr*, 274 N.W.2d 571, 578 (N.D.1979). Other courts, however, have concluded that "[t]he right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial." *Piedmont Equip. Co., Inc. v. Eberhard Mfg. Co.*, 99 Nev. 523, 665 P.2d 256, 260 (1983) (citations omitted). These courts have held that the facts developed during the litigation should control over the plaintiff's allegations. *See, e.g., Insurance Co. of North America v. King*, 340 So.2d 1175, 1176 (Fla.App.1976); *see also Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 339 (Tenn.1985) (mere allegations should not deprive retailer of indemnification); *Hanover Ltd. v. Cessna Aircraft Co.*, 758 P.2d 443, 449 (Utah App.1988) (indemnitee's right to costs and fees depends on facts presented to and facts found by jury).

¶ 21 In the main, we agree with the latter approach because a plaintiff's mere allegations of wrongdoing should not decide a seller/modifier's right to reimbursement of its attorneys' fees and costs. This is appropriate not only because an overconfident plaintiff may in good faith plead facts that cannot later be proved, but also because such a narrow review could encourage collusion between plaintiffs and potential indemnitees or indemnitors. For similar reasons, however, we further conclude that more than just the facts presented *at trial* ought to be considered. Instead, a fact finder ought to review both the cause of action as alleged by the plaintiff and the *entire record of the litigation,* including all discovery, pretrial motions and trial proceedings, to determine what claims confronted the defendants and what caused those claims to be brought.

¶ 22 Given the large chains of distribution and multiple component manufacturers common in today's marketplace, product liability actions present fact finders with countless varied situations. In addition, a myriad of different settlement scenarios are possible; a plaintiff may settle with any number of potential indemnitees or indemnitors at any time during oft-lengthy litigation. A flexible mode of review, such as ordered here, enables fact-finders to consider the entirety of the record on a case-by-case basis to determine whether a seller/modifier is entitled to reimbursement of its defense costs.

¶ 23 Finally, we sound a note of caution for the trial court on remand regarding the purpose of section 684. Section 684(A)(2) places the burden of the defense on a defective product's upstream manufacturer unless it can show that a downstream seller/modifier meets all of the requirements of section 684. *See McIntyre,* 165 Ariz. at 563–64, 799 P.2d at 904–05. It is Yamaha, as the upstream manufacturer, that must meet this burden or pay the costs of defending its product.

## CONCLUSION

¶ 24 For the foregoing reasons, we reverse and remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and CECIL B. PATTERSON, Jr., Judge.