HOWARD P. FOLEY CO., Appellant,

v.

Richard A. COX, et al, Appellees.

WESTINGHOUSE ELECTRIC CORPORATION, Appellant,

v.

Richard A. COX, et al, Appellees.

Nos. C14–83–420CV, A14–83–421CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 2, 1984.

John L. McConn, Jr., Butler, & Binion, Todd M. Lonergan, John D. Ellis and Associates, Houston, Otto D. Hewitt, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Richard Warren Mithoff, Jamail, Kolius & Mithoff, Houston, Samuel B. Kent, Jad Stepp, Royston, Rayzor, Vickery & Williams, Galveston, for appellees.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

This is a consolidated appeal from a judgment awarding damages to Richard Cox in a personal injury suit. Appellants, Howard

P. Foley Company (Foley) and Westinghouse Electric Company (Westinghouse), challenge the manner in which the trial court allocated damages in this case. We affirm.

Appellee Cox was injured while he was working on a piece of electrical equipment at a plant owned by Appellee Amoco Chemicals Corporation (Amoco). The piece of electrical equipment was an "Ampgard" starter manufactured by Westinghouse and sold to C.F. Braun & Company (Braun) for installation at Amoco's plant. Braun was hired by Amoco in 1975 to be general contractor for some construction work at the plant. During this time several of the Ampgard units were installed at the plant, although not all of the units were activated during the initial installation. Foley was hired by Braun in 1975 as a subcontractor to perform some of the work at the plant. In 1976, Sargeant Electrical Company (Sargeant) was hired by Braun as a subcontractor to do work related to the Ampgard units. In 1979, after the initial installation of the Ampgard units, Foley was hired by Amoco to do additional electrical work at the plant. Cox was an employee of Foley.

Cox was injured on October 10, 1980, when he reached into the high voltage section of one of the Ampgard starters. The Ampgard units were designed with separate high voltage and low voltage sections. The units were designed to have a protective barrier between the two sections to prevent contact with the high voltage section. This protective barrier was not in place when Cox was working on the low voltage section and his hand came in contact with the high voltage.

Cox filed suit against Westinghouse, Braun, Sargeant, Amoco and two Amoco employees to recover for his injuries. Cox's suit was based upon negligence and strict products liability. Amoco filed a third party action against Foley based upon an indemnity provision contained in the contract between Amoco and Foley. All the defendants filed cross-actions for contribution or indemnity against each other on contractual and common law theories.

The jury found that Braun and Westinghouse were both liable to Cox on the basis of strict products liability. The jury also returned findings that Amoco, Westinghouse and Foley were negligent. Although Cox's petition alleged that two Amoco employees, Brian Ballance and Sam Strickland, were also negligent, there was no jury issue submitted or finding as to their negligence. The jury assessed damages at $400,000. No issue of comparative causation was submitted to the jury.

On the basis of the jury's findings, the trial judge entered judgment in favor of Cox against Amoco, Braun and Westinghouse, jointly and severally, for the full amount of damages. The trial court then allocated the damages according to the various claims for contribution and indemnity. The court divided the verdict equally among Amoco, Braun and Westinghouse. The trial judge then awarded Amoco indemnity against Foley based upon the contract between the parties. Braun, as the innocent distributor of a defective product, was awarded indemnity from Westinghouse, the manufacturer of the Ampgard unit. The result is that Foley is required to pay one-third of the damage award and Westinghouse must pay two-thirds.

Both Foley and Westinghouse appeal. Westinghouse, in three points of error, does not attack any of the liability findings but rather argues that the trial judge improperly allocated the damage award among the defendants. Foley raises thirteen points of error which challenge the allocation of the damages, the sufficiency of the evidence to support certain findings of fact, and alleged inconsistencies between the findings of fact.

Westinghouse, in its first point of error, argues that the trial court erred when it awarded Braun both a right of contribution under Article 2212 and a right of indemnity under common law against Westinghouse. Since no issue on the comparative causation of injury between the negligent and strictly liable defendants was submitted, and the trial occurred prior to July 13, 1983, the doctrine of comparative causation

is not in issue. *See Duncan v. Cessna Aircraft Company,* 665 S.W.2d 414 (Tex. 1984). In addition, Westinghouse argues that since there were both negligent and strictly liable defendants, Article 2212a does not apply. *General Motors Corporation v. Simmons,* 558 S.W.2d 855 (Tex. 1977). Westinghouse alleges the trial court erred in the manner in which it applied Article 2212.

Westinghouse believes that the trial court erred in its division of the verdict because where there exists a right of indemnity under the common law there is no right to contribution under Article 2212. In support Westinghouse cites *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962); *Renfro Drug Company v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Traylor v. Gray,* 547 S.W.2d 644 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); and *Champion Mobile Homes v. Rasmussen,* 553 S.W.2d 237 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). There is language in the above cited cases which supports Westinghouse's position but we believe that the facts in those cases make them inapplicable here.

▇ The Supreme Court expressly pointed out that the system of comparative causation, adopted in *Duncan,* does not affect the right of an innocent retailer of a defective product to obtain indemnity from the manufacturer of that product. *Duncan v. Cessna Aircraft Company,* 665 S.W.2d at 432. The Court continued by emphasizing that *"each defendant member* of the marketing chain remains liable to the plaintiff (emphasis added)." *Id.* If each member of the marketing chain is liable to the plaintiff, then a method for allocating the damages must exist. Prior to the *Duncan* opinion the only method of allocating the damages among the strictly liable defendants and the negligent defendants was the rough pro rata division mandated by Article 2212. This system of allocating the damages did not depend upon the "fault" of each liable defendant but rather upon the "number" of liable defendants.

In *Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) the court was faced with claims for contribution and indemnity between negligent and strictly liable defendants. The defendants were all members of the chain of distribution of a defective product. The court stated that "each such defendant is liable for the full amount of actual damages found by the jury, and is entitled to one-third contribution from each of the other defendants." *Id.* at 333. On motion for rehearing the court considered Mahan's contention that it was entitled to full indemnity. Mahan's liability was found to be derivative through the manufacturer of the defective product and a negligent previous seller of the product. Upon that basis, Mahan was granted full indemnity from *both* of the other defendants. The Court of Appeals rendered judgment in favor of the plaintiff and against all three defendants, jointly and severally. The judgment entered on rehearing awarded Mahan indemnification resulting in each of the remaining defendants being liable for one-half of the actual damages.

▇ We believe that in situations like this the retailer of the defective product should be included under the article 2212 formula regardless of the right to later indemnification. As the Supreme Court has pointed out, each defendant member of the marketing chain of a defective product remains liable to the plaintiff. Regardless of any right to contribution or indemnity, Braun is liable to Cox. If we were to exclude Braun from the article 2212 formula, prior to its indemnity claim, Braun would be liable for the full amount of damages found by the jury while Amoco and Westinghouse would each only be liable for one-half of the damages. The problem of allocating damages among two or more negligent defendants and two or more strictly liable defendants will be alleviated by the doctrine of comparative causation adopted by the Supreme Court in *Duncan.* However, we believe the best way to handle an innocent retailer of a defective product in a case not covered by *Duncan* is to include the retailer with the other liable

defendants under article 2212 to determine the amount of each defendant's liability and then award the retailer indemnity against the manufacturer of the defective product. This is the method used by the trial court and we are unable to say the trial court erred. Westinghouse's first point of error is overruled.

In point of error two, Westinghouse argues that the trial court erred in awarding Braun indemnification from Westinghouse in violation of a provision contained in the contract between the parties. Westinghouse does not dispute that an innocent retailer has a right of indemnity against the manufacturer of a defective product. *Thiele v. Chick*, 631 S.W.2d 526 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Rather, Westinghouse argues that the purchase order between the parties contractually precluded this claim for indemnity. The clause in question provides:

> Westinghouse shall not be liable to Braun in contract or in tort for indirect, incidental, or consequential damages such as, *but not limited to,* loss of profits or revenue, loss of use of power system, cost of capital, or cost of purchased or replacement power, or claims of Braun for service interruptions.

We do not believe this clause precludes Braun's common law right to indemnity.

For a contract clause to preclude indemnity to an innocent retailer from the manufacturer of a defective product, the clause must include within its terms that such indemnity is specifically foreclosed. *See generally Southwestern Electric Power Company v. Martin Equipment Company*, 593 S.W.2d 428, 430 (Tex.Civ.App.—Dallas 1980, no writ). Although *Southwestern Electric* dealt with a clause that sought to impose indemnity, the same degree of specificity in language should be required in contract provisions which seek to preclude indemnity.

As we read the clause, it was designed to limit Westinghouse's liability for incidental or consequential damages in a suit by Braun against Westinghouse for damages caused to Braun by the product.

Braun's claim for indemnity does not appear to be covered by this limitation of liability provision. In fact, the word "indemnity" is not even included in the clause. We refuse to find that the contract foreclosed Braun's indemnity claim. Westinghouse's second point of error is overruled.

Westinghouse's third point of error deals with the trial court's refusal to allow a pro rata reduction in the judgment based on the negligence of Foley. The jury returned a finding that Foley was negligent, but the trial court did not consider that finding when it allocated damages among the various defendants because Foley, as Plaintiff's employer, had immunity under the Worker's Compensation statute. Westinghouse argues that the remaining defendants found liable should not have to bear the loss caused by Foley's negligence, and that a pro rata reduction in the judgment should have been ordered. We disagree with Westinghouse's argument.

In *Varela v. American Petrofina Company of Texas, Inc.*, 658 S.W.2d 561 (Tex. 1983), the Supreme Court was faced with a similar argument. In *Varela*, an injured employee, after settling his worker's compensation claim, brought an action against a third party whose negligence contributed to the injury. The defendant in that case argued that the employer's negligence should be taken into account to reduce the amount of damages found by the jury by the proportion of the employer's negligence.

The Supreme Court refused to allow the employer's negligence to be used to reduce the total amount of damages. The court pointed out that a defendant's claim of contribution is derivative of the plaintiff's right to recover from a joint defendant against whom contribution is sought. *Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 156 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). In *Varela*, as in our case, the employee was precluded from suing his employer by the Worker's Compensation Act. TEX.REV.CIV.STAT.ANN. art. 8306

§ 3 (Vernon Supp.1984). Although *Varela* involved article 2212a and our case involves 2212, we believe the same reasoning should apply. Westinghouse's third point of error is overruled.

In the first point of error, Foley also argues that the trial court erred in its allocation of the damages. Foley believes that the trial court should have apportioned fifty per cent of the damages among the strictly liable defendants, according to article 2212, and the remaining fifty per cent should have been apportioned among the negligent defendants under article 2212a. We disagree.

Foley's argument ignores the fact that prior to the *Cessna* opinion, when there are both negligent and strictly liable defendants, article 2212 controls the apportionment of damages between the multiple defendants. *General Motors Corporation v. Simmons*, 558 S.W.2d at 862. In addition, we believe the Supreme Court, by adopting the comparative causation doctrine in *Duncan v. Cessna Aircraft Company*, has foreclosed the type of damage allocation system for which Foley argues. Foley's first point of error is overruled.

In the second and sixth points of error, Foley argues that the trial court erred in making certain findings of fact because of factual insufficiency of the evidence to support those findings. The record before this court contains only a partial statement of facts. An Appellant seeking review has the duty to provide an appellate court with a record which includes whatever is material to his appeal. *Temple v. Dull*, 640 S.W.2d 639 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Calhoun v. Calhoun*, 617 S.W.2d 756 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). In the absence of a complete statement of facts, we refuse to pass on the factual sufficiency of the evidence to support the challenged findings. Foley's second and sixth points of error are overruled.

Foley's remaining points of error all seek to show that Braun should be liable for one-half of Amoco's liability to Cox on the basis of an indemnity provision contained in the 1975 contract between Amoco and Braun. In addition, Foley attempts to preclude Braun from "passing through" any of this liability on to Foley under the 1975 contract between Foley and Braun.

In points of error three and four, Foley attacks the trial court's finding of fact no. 13 which found that the accident made the basis of this lawsuit did not arise out of the contract between Amoco and Braun. In points five and seven, Foley claims that the trial court erred by failing to find that the 1975 contract between Amoco and Braun was in full force and effect at the time of the sale of the Ampgard units, and that the contract contained a valid and binding indemnity provision. Finally, in point of error eight, Foley argues that if the accident arose out of the 1975 Amoco-Braun contract, and that contract had a valid indemnity provision, then Braun also owes indemnity to Amoco and the trial court erred by ordering Foley alone to indemnify Amoco. Braun responds by saying that the 1975 Foley-Braun contract allows it to pass through to Foley any liability it may have to Amoco.

Foley's fifth point of error is that the trial court erred in failing to find that the 1975 contract between Braun and Amoco "was in full force and effect at the time of the installation of the Ampgard starter involved in the incident made the basis of this lawsuit as this was stipulated to by the parties." The trial court is not required to make findings of fact as to undisputed facts. *Jackman v. Jackman*, 533 S.W.2d 361 (Tex.Civ.App.—San Antonio 1975, no writ); 4 R. McDonald, Texas Civil Practice in District and County Courts § 16.05 (rev 1971). Foley's fifth point of error is overruled.

Under points of error ten and thirteen, Foley argues that the Foley-Braun contract requires that before Braun is entitled to indemnity from Foley there must be a specific finding that "the claim for which Braun is to be indemnified arose out of the performance of the contract by

Foley." Article 59 of the Foley-Braun contract provides:

> Contractor shall indemnify, protect, and save Braun and Braun's customer, their directors, officers, and employees harmless from and against any and all actions and causes of action, claims, demands, liabilities, losses, damage, injury, cost or expense of whatever kind or nature, including cost of litigation, attorney's fees, and reasonable expenses in connection therewith, brought or presented by any person, firm or corporation whatsoever including but not limited to third parties, employees of Braun or Braun's customer, employees of Contractor or of any subcontractor, and their dependents and personal representatives for injuries to or the death of any person, or damage to or loss of property, *arising out of any act or omission of Contractor, its vendors and/or subcontractors of any tier and the employees and agents of each in connection with, or incidental to any of the work, or the conditions of the work,* the jobsite, adjoining land or driveways, streets or alleys used in connection with the performance of the work, and irrespective of whether Braun and/or Braun's customer were concurrently negligent with Contractor and irrespective of whether Braun or Braun's customer's negligence was active or passive.
>
> The obligation set forth in this article shall, but not by way of limitation, specifically include all claims for or arising out of contamination, pollution and/or nuisance and all claims directly or indirectly arising or alleged to arise under any scaffolding, structural work, or safeplace law, or any law with respect to protection of adjacent landowners, but shall not include any claims arising from Braun's or its customer's sole negligence. (Emphasis added).

We believe that Foley's indemnification obligation under this clause was incurred if the claim of injury arose out of any act or omission by Foley, *or* if it was in connection with or incidental to any of the work. However, the clause does not require a precise finding of fact that the injury arose out of an act or omission by Foley. Findings of fact 21 and 22 were:

> 21. That the Westinghouse ampguard starter involved in the incident made the basis of this lawsuit was installed as a portion of the Howard P. Foley Company's performance of the contracts with C.F. Braun & Company and Amoco Chemicals Corporation, and said installation was done subject to the terms and conditions of the contract between C.F. Braun & Company and The Howard P. Foley Company.
>
> 22. That The Howard P. Foley Company and its agents and servants were negligent in the performance of their contracts with Amoco Chemicals Corporation and C.F. Braun & Company.

These findings were sufficient to impose upon Foley the indemnification obligation. Foley's points of error number ten and thirteen are overruled.

By points of error nine, eleven, and twelve, Foley argues that even if it must indemnify Braun, Braun may not "pass through" to Foley any of Braun's obligations to indemnify Amoco. Article 59 of the Braun-Foley contract quoted above clearly provides "Contractor shall indemnify, protect, and save Braun and Braun's customer...." In this case Foley was the contractor and Amoco was Braun's customer. In addition, Foley signed a contract in 1979 which contained a provision requiring Foley to indemnify Amoco. Foley was obligated under either contract to indemnify Amoco. We believe Article 59 of the Foley-Braun contract was a clear and unequivocal expression of intention that Foley was assuming a duty to indemnify Amoco, Braun's customer. Foley's points of error nine, eleven and twelve are overruled.

In points of error three and four, Foley complains that "the trial court erred in concluding pursuant to finding of fact no. 13 that the accident made the basis of this lawsuit did not arise out of the contract between Amoco Chemicals Corporation and C.F. Braun and Company dated

February 12, 1975...." Foley hopes to impose on Braun an obligation to indemnify Amoco based upon an indemnity provision in the Amoco-Braun contract. Even if we assume the trial court erred in making finding of fact no. 13, an issue we do not decide, Foley has failed to show that such an error was harmful error.

Because the Foley-Braun contract requires Foley to indemnify both Braun and Amoco "from and against any and all actions and causes of action, claims, demands, liabilities, loss, damages, injury, cost or expense of whatever kind or nature, including costs of litigation, attorney fees and reasonable expenses in connection therewith ...," Foley has failed to prove that any error in connection with finding of fact No. 13 was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Even if Braun owed indemnification to Amoco, the Braun-Foley contract would allow Braun to "pass through" this obligation to Foley. Foley's points of error three, four, seven and eight are overruled.

■ The trial court entered judgment in favor of Cox against two Amoco employees, Brian Ballance and Sam Strickland, even though no special issue was submitted and no finding was made as to the negligence of the employees. Appellees Ballance and Strickland argue in a cross-point that they were incorrectly included in the joint and several judgment because no findings were made as to their liability and no special issues were submitted against them. "The judgment of the court is to conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled...." Tex.R.Civ.P. 301. By rendering judgment against Ballance and Strickland, in the absence of a special issue or finding of fact, the trial court gave Cox relief that he was not entitled to. The cross-point is sustained. We hereby modify the judgment of the trial court so as to delete any judgment against Ballance and Strickland.

The judgment, as modified, is affirmed.