850 P.2d 119

**SCHWEBER ELECTRONICS, a New York corporation, Crossclaimant–Appellee,**

v.

**NATIONAL SEMICONDUCTOR CORPORATION, a Delaware corporation, Crossdefendant–Appellant.**

**No. 1 CA–CV 90–382.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 22, 1992.

Reconsideration Denied Nov. 6, 1992.

Review Denied May 4, 1993.

Teilborg, Sanders & Parks, P.C. by Robert J. Bruno, Phoenix, for crossclaimant-appellee.

Ryley, Carlock & Applewhite by Charles L. Chester, Richard E. Oney, Douglas G. Ott, Phoenix, for crossdefendant-appellant.

## OPINION

GRANT, Presiding Judge.

This appeal is based on a third-party complaint whereby a distributor of electronic components sought indemnity from the manufacturer after an end-user of the parts brought suit against both the distributor and the manufacturer. The trial court granted summary judgment in favor of the distributor on the third-party complaint, and the manufacturer appeals from that ruling. In this appeal, we must decide whether principles of implied indemnity were properly applied to the facts of the case, and, if so, whether a limitation of remedies clause is applicable to the indemnity liability.

## FACTS

Thesys Memory Products Corporation ("Thesys") is a designer and seller of add-on computer products. In 1985, Thesys was marketing the FASTCARD, a computer memory enhancement component. Thesys sought to expand the FASTCARD by adding a real time clock part that would enable computer users to see the current date and time on their screen at any given moment.

Thesys personnel investigated clock parts manufactured by different companies and finally settled on a part manufactured

by National Semiconductor Corporation ("National"). National sometimes sold its components directly to end-users but also often sold to end-users through various distributors.

Thesys eventually purchased National's real time clock part through Schweber Electronics Corporation ("Schweber"), a nationwide distributor of computer components and parts. To effectuate these sales, National and Schweber entered into a "Distributor Franchise Agreement." This agreement contained the following relevant paragraphs:

> The Distributor shall make no guarantee, warranty or representation of National products on behalf of National but shall refer purchasers and prospective purchasers to the published specifications and warranties made by National.
>
> National shall not be liable for loss, damage, detention or delay resulting from any cause whatsoever beyond its reasonable control. Receipt of National products by the Distributor upon delivery shall constitute a waiver of all claims for delay. In no event shall National be liable for consequential damages either to Distributor or Distributor's customers.

Each of the shipments of clock parts from National to Schweber contained a packing list from National. Contemporaneously with each shipment, National mailed to Schweber an invoice for the sale of the parts. Additionally, approximately every two months, National sent Schweber a Distributor Cost Schedule. All of these documents included National's warranty for the parts. The one-year warranty guaranteed that the products would be free from defect, excluding defects from misuse, neglect, accident or modification. The warranty obligated National to either replace the defective parts or give the buyer credit for the cost of the parts. The warranty contained a limiting provision as follows:

> THE FOREGOING WARRANTY AND REMEDIES ARE EXCLUSIVE AND ARE MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW, STATUTO-RY OR OTHERWISE, INCLUDING WARRANTIES OF MERCHANTABILI-TY AND FITNESS FOR USE. NATIONAL NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY OTHER LIA-BILITY IN CONNECTION WITH THE SALE, INSTALLATION OR USE OF ITS PRODUCTS AND NATIONAL MAKES NO WARRANTY WHATSOEV-ER FOR PRODUCTS NOT MANUFAC-TURED BY NATIONAL. NATIONAL SHALL NOT BE LIABLE FOR DAM-AGES DUE TO DELAYS IN DELIVER-IES OR USE AND SHALL IN NO EVENT BE LIABLE FOR INCIDEN-TAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, WHETHER ARISING FROM CONTRACT, TORT OR NEGLI-GENCE, INCLUDING BUT NOT LIM-ITED TO, LOSS OF PROFITS, LOSS OF GOODWILL, OVERHEAD OR OTHER LIKE DAMAGES.

During the summer and fall of 1985 Thesys purchased, through Schweber, over 6,000 real time clock parts from National. During the latter part of 1985 Thesys began to significantly increase production of the FASTCARD. Thesys advised National that 10,000 more clock parts would be needed by November 5, 1985.

National's Phoenix agent spoke with National personnel in California and learned that National would be unable to deliver the requested number of parts. However, the company had been developing an enhanced version of the clock part, with the hope that the newer part would eventually completely replace the older version. National advised Thesys that enough of the newer version of the part was on hand to fill Thesys's orders. During October and November of 1985 National sold to Schweber more than 16,000 of the newer version of the clock part, which Schweber in turn sold to Thesys.

In November of 1985, National received complaints from several of its customers, not including Thesys, that the enhanced version of the real time clock part was not accurately keeping time. During this period National also learned that several ship-

ments of the older version of the clock part had been mislabeled, and those parts were, in fact, the enhanced version of the part.

At the same time, Thesys was beginning to receive complaints from its customers that the clock function in the FASTCARD was not keeping accurate time. Thesys notified National of these complaints and requested replacement parts. By March of 1986 National had shipped 16,000 of the older version of the clock part to Schweber to replace the problem parts. Schweber in turn shipped these replacement parts to Thesys.

Further factual details will be set forth in our discussion of the issues raised by the parties.

## PROCEDURAL BACKGROUND

Thesys filed a complaint naming both Schweber and National as defendants. Thesys alleged that the clock parts were defective and sought damages based on common law fraud, negligent misrepresentation, consumer fraud, racketeering, breach of contract, breach of implied duty of good faith, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, promissory estoppel, fraud by nondisclosure and intentional interference with business relationships.

The parties filed motions and cross-motions for summary judgment. In addition, Schweber filed a counterclaim against Thesys to recover monies owed on Thesys's account with Schweber. Schweber also filed a cross-claim against National, in the form of a request for a declaratory judgment, seeking indemnity for any and all of Schweber's potential liability to Thesys.

The trial court granted partial summary judgment in favor of both defendants and against Thesys on all of the negligence claims. The court later granted partial summary judgment in favor of Schweber and against all of the claims raised by

Thesys except breach of contract and breach of express warranty.

As between National and Schweber, the court granted summary judgment in favor of Schweber on the cross-claim for indemnity. The relevant portion of the court's minute entry is as follows:

... Whether or not Schweber is entitled to indemnity depends upon the plaintiff's theories of recovery against Schweber. If Schweber extended implied warranties as a matter of law or if the alleged tortious conduct on the part of Schweber had been sustained, indemnity would not have been allowed.

Schweber can only recover for indemnity if it was merely an innocent conduit held liable for National Semiconductor's breaches or wrongful conduct. The remaining claims for breach of contract are claims for which Schweber is entitled to indemnity, including indemnity for its attorney's fees and costs incurred in defending those claims.

Following the court's ruling, and before trial, Schweber entered into a settlement agreement with Thesys whereby Schweber agreed to pay Thesys $75,000. Schweber agreed to dismiss its counterclaim against Thesys, and Thesys agreed to dismiss any remaining counts of the complaint against Schweber.[1]

As to National, all of Thesys's claims were disposed of either by summary judgment in favor of National or by directed verdict during trial, except the claims for breach of warranty, intentional interference with business relationships and negligent misrepresentation/nondisclosure. These latter three claims were eventually submitted to the jury, which returned a verdict in favor of Thesys on the breach of warranty claim, but in favor of National on the other two claims. The jury assessed Thesys's damages for National's breach of the warranty at $145,000. After the verdict was rendered National sought, and was granted, a credit against the judgment

---

1. Although National has not challenged the reasonableness of the settlement, we note that Schweber filed an Application for Good Faith Settlement Determination in the trial court. The court determined that the settlement was reasonably supported by the facts of the case and the relative positions of the parties, was made in good faith and was free from collusion.

for the $75,000 paid to Thesys by Schweber. The court also awarded Thesys its attorney's fees and costs.

## DISCUSSION

In this appeal, National challenges the trial court's grant of summary judgment in favor of Schweber on the cross-claim for indemnity. National argues that implied indemnity is improper as to the situation presented in this case. They further argue that, even if indemnity would normally be imposed in this situation, it is improper here because of the limitation of remedies and limitation of damages clauses found in the Distributor Franchise Agreement, packing slips, invoices and Distributor Cost Schedules.

### 1. *Implied Indemnity*

The right to indemnity is summarized in the Restatement of Restitution, section 76 (1937):

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

■ Implied indemnity is a concept born of the equitable principles stated in section 76 of the Restatement. When the parties expressly agree upon indemnity provisions in their contract, the extent of the duty is defined by the contract itself rather than common law principles. *INA Insurance Co. of North America v. Valley Forge,* 150 Ariz. 248, 252, 722 P.2d 975, 979 (App. 1986). However, pursuant to the Restatement and equitable principles of restitution, "[i]n the absence of an express indemnity agreement, a party has a right to indemnity when there is an implied contract for indemnity or when justice demands there be the right." *Id.*

■ National argues that implied indemnity should be limited to tort cases involving dangerously defective products. We disagree. As the Restatement and the common law make clear, the cornerstone of implied indemnity is the relationship of the parties. Restatement of Restitution, section 76, introductory note (quasi-contractual right of restitution exists because of the relation between the parties); *A.I.D. Ins. Services v. Riley,* 25 Ariz.App. 132, 541 P.2d 595 (1975).

Moreover, the case law is replete with decisions requiring indemnification based on breach of warranty claims, as opposed to tort or negligence claims. *See, e.g., Chirco Constr. Co., Inc. v. Stewart Title and Trust of Tucson,* 129 Ariz. 187, 629 P.2d 1023 (App.1981); *Pawelec v. Digitcom, Inc.,* 192 N.J.Super. 474, 471 A.2d 60 (1984); *Klages v. General Ordnance Equip. Corp.,* 240 Pa.Super. 356, 367 A.2d 304 (1976). Of course, as the cases show, and as the Restatement expressly states, the distributor or retailer must be innocent of any independent wrong or breach. *See, e.g., Agricultural Services Assoc., Inc. v. Ferry–Morse Seed Co., Inc.,* 551 F.2d 1057 (6th Cir.1977); *Herman v. General Irrigation Co.,* 247 N.W.2d 472 (N.D.1976); *Massingale v. Northwest Cortez, Inc.,* 27 Wash.App. 749, 620 P.2d 1009 (1980).

■ National argues that the existence of a contract between National and Schweber evidences an intent to allocate risk, and therefore implied indemnity principles are inapplicable. National relies on our decision in *INA Insurance,* but National misreads that case. In *INA Insurance* we held that the existence of an *indemnity* contract, or an *indemnity provision* in a contract, precluded application of implied indemnity principles. 150 Ariz. at 252, 722 P.2d at 979. We did not go so far as to hold that the existence of *any* contract between the parties prevents a claim of implied indemnity.[2]

**2.** National also seems to argue that because implied indemnity is based on theories of unjust enrichment, implied indemnity should not apply to this case because unjust enrichment is not available when contracting parties have re-

ceived the benefit of their bargain. *Brooks v. Valley Nat'l Bank,* 113 Ariz. 169, 548 P.2d 1166 (1976). We need not address this issue in detail because we find that implied indemnity is properly applied to this fact situation. We note in

■ The relationship of the parties involved in this case presents a classic case for indemnity. The trial court found that Schweber made no independent warranties to Thesys, either express or implied. All claims of independent wrongdoing by Schweber were dismissed. Schweber merely passed on National's express warranty, as Schweber was required to do according to the strict terms of the Distributor Franchise Agreement.

### 2. Limitation of Remedies/Limitation of Damages

National next argues that the trial court erred in granting Schweber indemnification because the forms exchanged by Schweber and National precluded National's liability for incidental and consequential damages.[3] National contends that Schweber's settlement with Thesys constitutes consequential or incidental damages as between National and Schweber. National also argues that Schweber's attorney's fees are likewise incidental and consequential damages not subject to the implied indemnity imposed by the trial court.

■ We reject the argument that the limitation of remedies and limitation of damages preclude National's duty to indemnify Schweber. Arizona courts have not addressed this specific issue in the past, but the courts of other jurisdictions, in similar chain-of-distribution cases, have not allowed a manufacturer to escape indemnity liability by adding limitation clauses to contracts with distributors and retailers.

In a closely analogous case, the Texas Court of Appeals held that an exclusion clause similar to the one contained in Na-

tional's forms was unenforceable against an indemnitee. *Howard P. Foley Co. v. Cox*, 679 S.W.2d 58 (Tex.App.1984). In *Cox*, a worker at Amoco Chemicals Corporation was injured by a piece of electrical equipment manufactured by Westinghouse and sold to C.F. Braun and Company, who in turn sold the piece to Amoco. Cox was an employee of a subcontractor, the Foley Company, hired to do work at Amoco's plant. Cox filed suit against Westinghouse, Braun, Amoco and others. All defendants filed cross-claims for indemnity and contribution. The jury found Braun and Westinghouse liable to Cox on a strict products liability theory. The trial court ruled that Braun, the distributor/reseller, was entitled to indemnity from Westinghouse, the manufacturer.

On appeal, Westinghouse argued that a limitations clause in Westinghouse's purchase order precluded incidental and consequential damages. The appellate court held that any such limitations clause must be very specific, and that the limitations clause did not apply to an indemnity situation.

> For a contract clause to preclude indemnity to an innocent retailer from the manufacturer of a defective product, the clause must include within its terms that such indemnity is specifically foreclosed. . . .

> As we read the clause, it was designed to limit Westinghouse's liability for incidental or consequential damages in a suit by Braun against Westinghouse for damages caused to Braun by the product. Braun's claim for indemnity does not appear to be covered by this limitation of liability provision. In fact, the word "in-

passing, however, that this argument is somewhat disingenuous in light of the fact that National received a credit against the $145,000 judgment for the $75,000 paid to Thesys by Schweber.

**3.** Schweber argues that the Distributor Franchise Agreement is the sole contract between Schweber and National. Schweber contends that the invoices, packing slips and cost schedules sent later are unilaterally issued documents that cannot modify the original agreement. National argues that the invoices and packing slips, along with the Distributor Cost Schedules, each

constitute a contract for the sale of goods. National's limitation of damages appears in all of these documents. Our resolution of the case does not depend on which documents control, and we therefore do not reach this collateral issue.

Schweber also argues that the limitation of remedies in this case failed of its essential purpose and is therefore unenforceable. *See* Ariz. Rev.Stat.Ann. ("A.R.S.") § 47–2719(B). This argument was not raised in the trial court and we therefore will not address it on appeal.

demnity" is not even included in the clause. We refuse to find that the contract foreclosed Braun's indemnity claim. 679 S.W.2d at 63.

National's limitation of damages clause reads somewhat differently than the provision at issue in *Cox*, in that National intended to exclude incidental and consequential damages to Schweber *or any of Schweber's customers.* However, our reading of the provisions in National's forms leads us to conclude that, as between Schweber and National, incidental and consequential damages can only be excluded in a suit by Schweber against National for breach of contract, breach of warranty or for some damages resulting from the transaction between Schweber and National. This case does not involve such an action. Schweber has never contended that National breached any contractual duty owed to Schweber. Instead, this case involves an action by the end-purchaser against National and Schweber for breach of warranty. Simply put, National cannot limit the end-purchaser's claims for incidental and consequential damages by including a clause in the forms sent to Schweber.[4] Because this action involves a suit by the end-purchaser against both National and Schweber, the limiting language is not effective as to Schweber's claim for indemnity.

Public policy also supports our holding that the limitations clauses cannot be applied to the indemnity claim. The courts of other jurisdictions have refused to apply limitations clauses to indemnity liability, basing their decisions on grounds of "fairness," "balancing of the equities" or "unconscionability." *See Ford Motor Co. v. Tritt*, 244 Ark. 883, 430 S.W.2d 778 (1968);

and *Majors v. Kalo Laboratories, Inc.*, 407 F.Supp. 20 (M.D.Ala.1975).

National correctly points out that the Uniform Commercial Code, as codified at chapter 47 of the Arizona statutes, allows for limitation of damages. *See* A.R.S. § 47–2719(C). However, section 47–2719(C) allows limitation of consequential damages "unless the limitation or exclusion is unconscionable."

### 3. *Attorney's Fees* [5]

■ The Restatement of Restitution states that an indemnitee is entitled to "the amount of his net outlay properly expended...." Restatement of Restitution § 80 and comment b. The general rule is that attorney's fees and costs are recoverable as part of the indemnification. *INA Insurance*, 150 Ariz. at 255, 722 P.2d at 982 (quoting *St. Paul Fire and Marine Ins. Co. v. Crosetti Bros.*, 256 Or. 576, 475 P.2d 69, 71 (1970)).

■ National argues that Schweber's attorney's fees and costs are incidental and consequential, and therefore excluded by the forms and contracts between Schweber and National. Just as we rejected this argument with regard to Schweber's settlement payment, we reject it with regard to the attorney's fees. In light of the general rules of indemnity, as stated above, the attorney's fees expended by Schweber in its initial defense of the underlying claim are an integral part of National's obligation to indemnify Schweber.

In *INA Insurance* we recognized that "[a]n indemnitee under implied indemnity 'may recover only those fees and expenses attributable to the making of defenses

---

4. Of course, under certain circumstances, National can limit the end-users' damages and remedies. *See* A.R.S. § 47–2719(C). In this case, the trial court's minute entry ruling on the motions for summary judgment stated that the ineffectiveness of the limitations clauses, as urged by Thesys, could not be decided on summary judgment. Because this appeal involves only the cross-claim, we express no opinion on the effectiveness of the clause as to Thesys, nor can we determine whether any of the $145,000 judgment is for incidental or consequential damages.

5. The final judgment entered in favor of Schweber against National granted Schweber attorney's fees in the amount of $181,484.50. Because National's indemnity liability to Schweber was not even half of the amount awarded in attorney's fees, we echo the sentiment of Judge (now Justice) Corcoran, writing for this court in another indemnity case: "We recognize that the attorneys' fees in this case have not simply become a case of the tail wagging the dog; the attorneys' fees have become the dog." *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 475, 733 P.2d 652, 672 (App.1986).

which were not primarily directed toward rebutting charges of active negligence.' " 150 Ariz. at 255–256, 722 P.2d at 982–983. We have also acknowledged that "the right of indemnity includes a right to attorney's fees incurred in defending the underlying claim, but does not include the right to fees incurred in establishing the right of indemnity." *Id.* at 256, 722 P.2d at 983; *see also McIntyre Refrigeration, Inc. v. Mepco Electra,* 165 Ariz. 560, 565, 799 P.2d 901, 906 (App.1990).

 In the present case, neither Schweber's affidavit for attorney's fees nor the trial court's judgment differentiates between costs and fees incurred in the underlying action and those incurred in prosecution of the indemnity claim. However, we find that the difference is of no consequence. In Arizona, a litigant may recover costs and fees incurred in an action that arises out of contract. A.R.S. § 12–341.01. The fees and costs may be recovered regardless of whether the contract is express or implied. *Id.* Therefore, pursuant to A.R.S. section 12–341.01, as well as general rules of indemnity recovery, we find that the trial court did not err in awarding Schweber its attorney's fees and costs. We note that even in *INA Insurance* the court, after stating the general rule quoted above, awarded INA its fees on appeal pursuant to A.R.S. section 12–341.01.[6]

## CONCLUSION

The trial court properly ruled that Schweber, as an innocent conduit in the distribution chain, is entitled to indemnity from National. Although we can imagine cases where a manufacturer might limit its indemnity liability through limitation of damages and limitation of remedies provisions, National's limitations in this case do not apply to National's indemnity obligation to Schweber. Finally, the limitations provisions similarly do not apply to Schweber's attorney's fees and expenses,

and the trial court therefore properly awarded Schweber its fees and costs.

Schweber requests an award of its attorney's fees on appeal. In our discretion we grant this request. Schweber is directed to comply with Rule 21, Arizona Rules of Civil Procedure and *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

The judgment of the trial court is affirmed.

LANKFORD and TOCI, JJ., concur.

---

6. *McIntyre* is also not to the contrary. That case is distinguishable based on the fact that indemnity, as well as attorney's fees, were sought based on A.R.S. section 12–684, a statute by which the legislature specifically allowed indemnification in a products liability claim. The court analyzed the statutory language to deny recovery of attorney's fees and costs incurred in pursuit of the indemnity claim.