Internat'l Insurance v. RRC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 




NO. 3-94-060-CV




INTERNATIONAL INSURANCE AGENCY, INC.; BERT WHISENANT, JR. D/B/A


BERT WHISENANT INSURANCE; GREGG L. CARTER D/B/A R. B. CARTER


AGENCY; INSURANCE EXPRESS, INC.; HECTOR VILLARREAL; AND


MAUDE LETTE, ELMER LETTE, AND JAMES LETTE, INDIVIDUALLY,


JOINTLY, AND D/B/A LETTE INSURANCE AGENCY,



 APPELLANTS


vs.





RAILROAD COMMISSION OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 92-15754, HONORABLE JERRY DELLANA, JUDGE PRESIDING


 




 The opinion issued herein on December 7, 1994, is withdrawn, and the following
opinion is filed in lieu thereof.

 International Insurance Agency, Inc. and other insurance agents and brokers (1)
(collectively "Plaintiffs") filed suit in district court pursuant to the Administrative Procedure Act,
Tex. Gov't Code Ann. § 2001.038 (West 1994), challenging the validity of a Railroad
Commission rule providing an alternative method for registering intermittent international
commercial carriers. See 16 Tex. Admin. Code ("TAC") § 5.507(c) (1994). Plaintiffs appeal
from a declaratory judgment upholding the rule. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 Texas law requires all commercial motor vehicles to register annually with the
Railroad Commission ("the Commission"). See Tex. Rev. Civ. Stat. Ann. art. 911b, § 4(a)(13)
(West Supp. 1994). All commercial motor carriers are also required to maintain liability
insurance, at limits set by the Commission, and file proof of such insurance with the Commission. 
Tex. Rev. Civ. Stat. Ann. art. 6701d, § 139(c) (West Supp. 1994). Typically, commercial motor
vehicles meet these requirements through annual registration, documenting compliance with a "cab
card." These cab cards, issued by the Commission, evidence both registration with the
Commission and compliance with the liability insurance requirements. See 16 TAC §§ 5.501-5.506.

 In 1988, in response to insurance industry concerns, the Commission determined
that the cab-card procedure posed unacceptable burdens on intermittent international commercial
carriers that enter the United States under temporary insurance policies frequently referred to as
"trip insurance." See 13 Tex. Reg. 1501 (1988). To respond to this problem, the Commission
developed a special alternative registration system for international carriers entering the country
on a temporary and irregular basis. In lieu of maintaining commercial motor vehicle registration
through use of annual registration and the cab-card procedure, these carriers were permitted to
register through an international registration stamp program. See 16 TAC § 5.507.

 This alternative compliance program works in the following manner. Participating
insurance agents file evidence of a master insurance policy with the Commission. Only agents
who file this documentation may obtain and sell international registration stamps. The
Commission assigns each master policy an identification number. The international registration
stamps bear the number of the corresponding master policy. 16 TAC §§ 5.507(c)(2)-(3). When
an international motor carrier uses this alternative procedure, the insurance agent selling the policy
is required to record certain basic information about the insured and, within thirty days, file this
information with the Commission on a form provided. (2) 16 TAC §§ 5.507(c)(4)-(5). To document
the registration and temporary trip insurance, the international commercial carrier must purchase
a ten-dollar international registration stamp from the insurance agent. (3) 16 TAC § 5.507(c)(1). 
This stamp must be affixed to the temporary insurance policy and be carried in the vehicle at all
times. 16 TAC § 5.507(c)(6). 

 The Commission also established procedures for insurance agents to procure the
stamps. An agent who has filed evidence of a master policy with the Commission may purchase
the stamps in advance in lots of five, or may obtain them on consignment by posting a bond in
the amount of twice the total value of stamps held on consignment. 16 TAC §§ 5.507(c)(2), (7). 
Agents must remit fees collected from the sale of international stamps on consignment within
thirty days of sale. 16 TAC § 5.507(c)(8). For stamps not held on consignment, agents must
submit evidence of sale of the stamp within ninety days. 16 TAC § 5.507(c)(9).

 Plaintiffs brought a declaratory judgment action against the Commission seeking
to declare invalid these provisions embodied in section 5.507(c). They challenged the rule on two
grounds: exceeding statutory authority and federal preemption. The district court concluded that
the Commission did not exceed its statutory authority in promulgating section 5.507(c) and,
further, that the registration fee required by the rule was not preempted by federal law. Plaintiffs
appeal the trial-court judgment in seven points of error.



DISCUSSION


A.  STATUTORY AUTHORITY

 In their first point of error, Plaintiffs contend the trial court erred in declaring that
section 5.507(c) did not exceed the Commission's statutory authority. The essence of this
challenge is that section 5.507(c) extends the Commission's regulatory power over insurance
agents without legislative authorization to do so. We disagree.

 The test for whether an agency rule exceeds statutory authority is whether the rule
is in harmony with the general objectives of the statute. Railroad Comm'n v. Lone Star Gas Co.,
844 S.W.2d 679, 685 (Tex. 1992); Gerst v. Oak Cliff Sav. & Loan Ass'n, 432 S.W.2d 702, 706
(Tex. 1968). To make this determination, we must look not only to a particular provision of the
act, but to all applicable provisions. Gerst, 432 S.W.2d at 706; Chrysler Motors Corp. v. Texas
Motor Vehicle Comm'n, 846 S.W.2d 139, 141 (Tex. App.Austin 1993, no writ). As in all
questions of statutory interpretation, we are guided by the intent of the legislature. See Tex.
Gov't Code Ann. § 312.005 (West 1988); Monsanto Co. v. Cornerstones Mun. Util. Dist., 865
S.W.2d 937, 939 (Tex. 1993).

 The legislature has vested the Commission with power and authority to "supervise
and regulate the transportation of property for compensation or hire by motor vehicle on any
public highway in this State . . . ." Tex. Rev. Civ. Stat. Ann. art. 911b, § 4(a)(1) (West Supp.
1994). This broad grant of authority is intended to enhance public safety and to physically protect
the highways. Tex. Rev. Civ. Stat. Ann. art. 911b, § 22b (West 1964) (declaration of policy);
Great Nat'l Life Ins. Co. v. Chapa, 377 S.W.2d 632, 634-35 (Tex. 1964). 

 To accomplish these general objectives, the Commission has specific legislative
authorization over commercial vehicles. All commercial motor vehicles are required to register
with the Commission. Tex. Rev. Civ. Stat. Ann. art. 911b, § 4(a)(13) (West Supp. 1994). 
Additionally, all motor carriers must maintain proof of liability insurance at levels established by
the Commission. Tex. Rev. Civ. Stat. Ann. art. 6701d, § 139(c) (West Supp. 1994). The
Commission is also authorized to "adopt regulations necessary to ensure that motor carriers
maintain proof of liability and property damage insurance." Id.  While these legislative
authorizations do not specifically mention insurance agents, the Commission determined that they
provide sufficient authority for its rule in the context of a voluntary, alternative compliance
program for intermittent international commercial carriers. We agree.

 The alternative program simply requires insurance agents who choose to sell trip
insurance to infrequent international carriers to record basic information about the carrier and to
affix a stamp that identifies the temporary trip insurance policy with a master policy on file with
the Commission. These requirements are "in harmony" with the statutory authorization that the
Commission register and require proof of insurance of commercial carriers. The program is
certainly consistent with the general objective of enhanced public safety. Moreover, if the
Commission cannot require insurance agents who voluntarily agree to participate in this alternative
registration program to comply with section 5.507(c) requirements, there may be no effective
alternative to ensure that these temporary visitors are properly registered and insured as required
by statute. Section 5.507(c) does impose some burdens on insurance agents; however, those
agents who find this voluntary alternative program too burdensome have an easy solution: They
can simply decline to participate in the program. 

 Plaintiffs rely on language in a 1939 opinion from this Court that the Commission
is powerless to impose additional burdens on insurance companies. See Railroad Comm'n v.
Highway Ins. Underwriters, 124 S.W.2d 413, 414 (Tex. Civ. App.Austin 1939, no writ). In
Highway Insurance, the Commission required insurance companies writing liability policies for
motor carriers to deposit $50,000 in cash or securities with the Commission before it would
approve the insurance carrier. We held that, because former section 13 of the Motor Carrier Act
required only that the insurance be issued by a company "authorized by law to transact business
in Texas," forcing a company to meet an additional $50,000 deposit requirement after it had
already been authorized to do business by the Board of Insurance exceeded the Commission's
statutory authority. Id. at 413-14.

 The present case, however, is distinguishable. First, when Highway Insurance was
decided, the Commission was operating without the statutory authorization to register and require
proof of insurance present today. These specific grants of authority now provide the Commission
with authority it did not possess in 1939. Further, unlike Highway Insurance, the Commission
here is not imposing an additional burden on insurance agents under circumstances where the
legislature has previously limited Commission authority to a single requirement. Given the
differences in these two situations, Highway Insurance is not controlling.

 Recent appropriations acts confirm our interpretation of the legislature's intent
regarding the Commission's statutory authority. The 1991 legislative appropriation for the
Railroad Commission provides that "[t]he Railroad Commission shall adopt rules providing for
the following transportation fees" and lists the then twenty-dollar international stamp. General
Appropriations Act, 72d Leg., 1st C.S., ch. 19, 1991 Tex. Gen. Laws 365, 603 (emphasis
added). The most recent appropriation act goes even further. It includes the general authorization
above, as well as a specific authorization concerning the international stamps: "Only if an
insurance agent elects to file evidence of a master liability policy under which temporary insurance
policies are issued, or to issue temporary insurance, may the Commission require an insurance
agent to obtain international registration stamps as provided by Commission rules." General
Appropriations Act, 73d Leg., R.S., ch. 1051, 1993 Tex. Gen. Laws 4531, 4805-06. 

 Our objective is to ascertain the consistent purpose of all legislative enactments and
to carry out the legislative intent by giving effect to all laws bearing on the same subject. Reed
v. Department of Licensing & Regulation, 820 S.W.2d 1, 2 (Tex. App.Austin 1991, no writ). 
This is true even if the laws were enacted by different sessions of the legislature. Id. Standing
alone, these enactments provide insight into the intent of the legislature to authorize Commission
authority over insurance agents in this limited context. Coupled with the statutory authorization
to register and require proof of insurance, we conclude that section 5.507(c) is within the
Commission's statutory authority. Point of error one is overruled.



B.  FEDERAL PREEMPTION

 In their second point of error, Plaintiffs contend that federal law preempts section
5.507(c). Preemption exists when: (1) Congress explicitly preempts state law; (2) Congress
implicitly preempts state law by intending to completely occupy a given field; or (3) state law
conflicts with federal law. Lone Star Gas, 844 S.W.2d at 691. Plaintiffs contend that the ten-dollar per trip cost of the registration stamps under section 5.507(c) directly conflicts with a ten-dollar annual registration fee limitation imposed by Interstate Commerce Commission ("ICC")
regulations. (4) See 49 C.F.R. §§ 1023.4-.5 (1993). Examination of the motor carriers covered by
these different state and federal regulations demonstrates that no such conflict exists.

 The ICC regulations contained in 49 C.F.R. § 1023 are designed to replace the
multi-state vehicle registration system with a simplified, single-state insurance-based registration
system. 58 Fed. Reg. 28932 (1993). However, the regulations in this new system do not apply
to all motor carriers. They only affect a "motor carrier holding a certificate or permit issued by
the [Interstate Commerce] Commission under 49 U.S.C. 10922 or 10923." 49 C.F.R.
§ 1023.4(a) (1993). Likewise, section 5.507 does not apply to all carriers. Specifically excluded
from coverage is "a motor carrier as defined in § 5.331 of this title." 16 TAC § 5.501(c)(3). 
Section 5.331 defines "motor carrier" as one "holding operating authority issued by the Interstate
Commerce Commission, or a motor carrier of passengers or property for compensation engaged
in interstate or foreign commerce when those operations are exempt from economic regulation by
the Interstate Commerce Commission under the IC Act." 16 TAC § 5.331 (1994). Consequently,
if a motor carrier operates under an ICC certificate and is subject to the single-state registration
system, section 5.507(c) requirements do not apply. (5) Since there is no overlap between the
carriers to which the ICC requirements and those of section 5.507(c) apply, no conflict exists and
the Commission's rule is not preempted. Point of error two is overruled.



C.  AIDING AND ABETTING

 Point of error three focuses on an "aiding and abetting" allegation. Plaintiffs
contend that in a pending administrative enforcement action, the Commission alleges that one of
the appellants, Gregg L. Carter, aided and abetted a violation of the Motor Carrier Act by selling
trip insurance without the required stamp. Plaintiffs sought a declaration that the sale of trip
insurance without the required stamp was not aiding and abetting a violation of section 5.507. 
The trial court refused to grant this declaration, concluding that it would be an impermissible
advisory opinion to determine this issue while it was still pending before the Commission. We
agree. 

 The complaint against Carter includes the allegation that he "procure[d]
transportation of foreign shipments . . . and violate[d] [section 5.507] by hiring a motor carrier
that was not registered as an International Commercial Carrier with the Railroad Commission of
Texas." While the trial court found this to be an "aiding and abetting" allegation, the record does
not reflect a final determination by the Commission on this issue. Additionally, the testimony of
Joe Barnard, the Commission's employee who issued the complaint, indicates uncertainty as to
the validity of the aiding and abetting charge. When asked if selling trip insurance without the
stamp was aiding and abetting, he responded: "I'm not sure that it's aiding and abetting of the
violation of the rule." While confident that the sale of insurance without the stamp was a direct
violation of section 5.507, he maintained throughout his testimony that he was simply unsure
about the validity of an aiding and abetting charge. 

 Faced with the uncertainty of whether the Commission would pursue an aiding and
abetting charge and how it would be ultimately resolved, the trial court appropriately refused to
make a declaration concerning this allegation. Before declaring whether Carter's conduct
constitutes an aiding and abetting violation, the Commission should be given the opportunity to
pass on this issue. Given the pending nature of this complaint, coupled with the uncertainty
expressed by the Commission's own enforcement officer, the trial court's refusal was not error. 
To do otherwise would amount to an improper advisory opinion. (6) See Texas Ass'n of Business
v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993); Texstar N. Am., Inc. v. Ladd
Petroleum Corp., 809 S.W.2d 672, 679 (Tex. App.Corpus Christi 1991, writ denied); Stop 'N
Go Markets v. Executive Sec. Sys., Inc., 556 S.W.2d 836, 837 (Tex. Civ. App.Houston [14th
Dist.] 1977, no writ). Point of error three is overruled.



D.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

 At Plaintiffs' request, the trial court made findings of fact and conclusions of law
to support its judgment. In their four remaining points of error, Plaintiffs challenge these findings
and conclusions. The basis of all these challenges is essentially that the trial court's findings and
conclusions were not in Plaintiffs' favor. These points are meritless.

 Point of error four contends that the trial court erred in failing to enter additional
findings of fact and conclusions of law. The trial court is only required to make additional
findings of fact and conclusions of law that are appropriate. Tex. R. Civ. P. 298; Tamez v.
Tamez, 822 S.W.2d 688, 692 (Tex. App.Corpus Christi 1991, writ denied). If the refusal does
not prevent the adequate presentation on appeal, there is no reversible error. Tamez, 822 S.W.2d
at 693; Baucom v. Crews, 819 S.W.2d 628, 632 (Tex. App.Waco 1991, no writ). If a party
requests additional findings that are directly contrary to, or inconsistent with, the original
findings, the court need not make such additional findings. Tamez, 822 S.W.2d at 693; see
Strickland v. Coleman, 824 S.W.2d 188, 193 (Tex. App.Houston [1st Dist.] 1991, no writ). 
These principles completely resolve this point of error. The trial court's denial of Plaintiffs'
additional findings, including several which are directly contrary to the court's original findings,
has in no way affected Plaintiffs' ability to pursue this appeal. Point of error four is overruled.

 In point of error five, Plaintiffs complain of the trial court's finding of fact number
two, which reads: "Plaintiff and Intervenors are insurance agents or brokers that sell temporary
liability insurance to international commercial motor carriers operating across the border with
Mexico." Plaintiffs argue that this finding illustrates a "fundamental misunderstanding" because
the agents sell insurance to commercial carriers coming into the United States from Mexico. 
While the wording of this finding may not be as precise as possible, given the accompanying
findings and conclusions it is clear that the trial court understood that the insurance agents were
those subject to section 5.507. (7)
 Point of error five is overruled.

 Point of error six assigns error to the trial court's conclusion that Plaintiffs were
not entitled to attorney's fees under former article 6252-30. See Act of June 1, 1987, 70th Leg.,
R.S., ch. 290, 1987 Tex. Gen. Laws 1650, 1650 (Tex. Rev. Civ. Stat. Ann. art. 6252-30, since
repealed and codified at Tex. Gov't Code Ann. §§ 2006.001-.016 (West 1994)). These provisions
allow a small business to recover attorney's fees in an administrative adjudicatory proceeding or
a civil action resulting from a complaint issued by a state agency if the business prevails and the
action was groundless and brought in bad faith or for harassment. Tex. Gov't Code Ann.
§ 2006.013 (West 1994). Since Plaintiffs did not prevail in the trial court or here, this section
does not apply. Point of error six in overruled.

 In a final point of error, Plaintiffs offer a generic assertion that the trial court's
"findings of fact do not support the judgment." Plaintiffs complain that the trial court's findings
do not reveal the factual bases of the court's determinations that the Commission did not exceed
its statutory authority in promulgating section 5.507(c) and that federal law does not preempt the
rule embodied in that section. Plaintiffs admit in their brief that the trial court's findings may be
"fully supported by the evidence." Nor is there any suggestion that these findings somehow
conflict with the conclusions of law. Rather, the essence of this point is that the trial court did
not enter enough findings of fact to support the judgment. We disagree.

 The trial court's conclusions on the issues of statutory authority and federal
preemption are determinations of pure questions of law and appear to have been based entirely
on undisputed facts. A trial court is not required to make findings of fact as to undisputed facts. 
Howard P. Foley Co. v. Cox, 679 S.W.2d 58, 64 (Tex. App.Houston [14th Dist.] 1984, no
writ). The additional findings that Plaintiffs requested the court below to make were either (1)
undisputed facts, (2) immaterial facts, or (3) actually conclusions of law. Point of error seven is
overruled.



CONCLUSION


 The trial court did not err in declaring the Commission has statutory authority for
the alternative registration program embodied in section 5.507(c). Likewise, section 5.507(c) is
not preempted by federal regulations, because the two programs apply to different motor carriers. 
Having overruled all of Plaintiffs' points of error, we affirm the trial-court judgment.



 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and B. A. Smith

Affirmed

Filed: February 1, 1995

Publish

1.   These are: Gregg L. Carter d/b/a R. B. Carter Agency; Bert Whisenant d/b/a Bert
Whisenant Insurance; Insurance Express, Inc.; Hector Villarreal; and Maude Lette,
Elmer Lette, and James Lette, individually, jointly, and d/b/a Lette Insurance Agency.
2.   The record includes a copy of the current form used by the Commission. This
single page form, preprinted with the name of the insurer and master policy number,
accommodates five different carriers. The agent records only five lines of information. 
This basic information includes: name of carrier, year and make of vehicle, vehicle
identification number, port of entry, license plate number, trip policy number, and date
of sale.
3.   When originally established in 1988, the international stamp cost two dollars. 13
Tex. Reg. 1501 (1988). The stamp cost was later raised to twenty dollars. 17 Tex. Reg.
5285 (1992). In 1993, the Commission reduced the cost of the stamp to the current ten
dollars. 18 Tex. Reg. 8196 (1993).
4.   It is questionable whether Plaintiffs even have standing to raise this point of error. 
Essentially, they argue that the amount of the fee is preempted because it exceeds the ten-dollar per year limit. However, it is undisputed that the motor carrier, not the insurance
agent, ultimately bears this cost. See 16 TAC § 5.507(c)(1) ("[A]n international commercial
carrier shall purchase . . . an international registration stamp."). While a motor carrier who
has actually paid this allegedly preempted fee might have standing, insurance agents who do
not bear this expense and suffer no injury from the amount of the fee arguably do not. We
will assume standing, however, and address the merits of this preemption claim. 
5.   The ICC regulations also apply to carriers granted emergency temporary authority
or temporary authority having a duration of 120 days or less. 49 C.F.R. §§ 1023.4(a),
(c)(1) (1993). If a carrier operates under this type of temporary authority, it would not
fall under the requirements of § 5.507(c) since it would still be "holding operating
authority issued by the Interstate Commerce Commission."
6.   Partly because this point of error involves a request that the trial court determine
the applicability--rather than the validity--of a Commission rule while the question is still
pending before the Commission, the issue appears to be one of "ripeness." See Pete
Schenkkan, Judicial Review of Agency Rules and Actions Under APTRA Section 12, in State
Bar of Texas Prof. Dev. Program Advanced Administrative Law Course U, U-14 to U-19
(1993). If the Commission ultimately decides to pursue an aiding and abetting violation and
finds against Carter, he will then have the opportunity to bring a suit for judicial review to
challenge the Commission's action under the Administrative Procedure Act, Tex. Gov't Code
Ann. §§ 2001.171-.178 (West 1994). Until then, however, the issue is not ripe for
adjudication in the courts.
7.   For example, conclusion of law number one states: "Plaintiff and Intervenors are
insurance agents under [section 5.507] and are subject to the provisions of that rule."